UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARTEMIO MUNGIA ZEJADA,

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-08256-DC-CSK (HC)

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR TEMPORARY RESTRAINING ORDER

(Doc. Nos. 1, 2, 3, 4)

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 3), filed in conjunction with his petition for writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) Respondents do not oppose the court ruling directly on the merits of the habeas petition. (Doc. No. 9 at 1.) Given that Petitioner is proceeding *pro se* and the court will be granting the relief he seeks, the court will not await the filing of a reply by Petitioner as that would delay the relief he seeks in his petition. For the reasons explained below, the court finds that Respondents violated the due process clause by failing to provide Petitioner with a pre-deprivation bond hearing and violated the Immigration and Nationality Act by failing to provide Petitioner with an initial custody determination. Thus, the court will grant Petitioner's habeas petition and motion for a temporary restraining order and will order his immediate release.

/////

**BACKGROUND**

Petitioner Artemio Mungia Zejada is a native and citizen of Mexico. (Doc. No. 9-1 at 1.) Petitioner entered the United States at an unknown date and time. (*Id.*) Petitioner had not been previously detained by U.S. immigration authorities. (*Id.*) Petitioner developed a criminal record while in the United States including, most recently, a February 5, 2026 arrest for threatening crime with intent to terrorize in violation of California Penal Code § 422(a). (Doc. No. 9-1 at 18–19.) Petitioner came to the attention of U.S. Immigration and Customs Enforcement ("ICE") due to this arrest. (*Id.* at 3.) Petitioner was detained by ICE officers on March 17, 2026. (*Id.*) On that same day, Petitioner was served with a notice to appear. (Doc. No. 9-1 at 8–10.) Respondents do not allege Petitioner was served an arrest warrant or notice of custody determination upon his initial arrest nor do they attach those documents to their opposition. Petitioner was, however, served with a notice of custody determination on August 5, 2026, approximately five months after his detention. (Doc. No. 9-1 at 11.)

On July 20, 2026, Petitioner filed a habeas petition in this district *Mungia Zejada v. Warden, Golden State Annex Detention Facility*, Case No. 1:26-cv-05651-DC-CSK ("*Mungia Zejada I*"). On July 22, 2026, Respondents filed their opposition in *Mungia Zejada I* asserting that Petitioner "entered the United States without inspection or admission at an unknown date, time, and place and, having never been admitted, remains an applicant for admission under 8 U.S.C. § 1225(b)(1)," which Respondents asserted subjected Petitioner to "mandatory pre-order detention." (*Mungia Zejada I*, Doc. No. 8 at 1, 2.) Respondents further asserted that Petitioner "did not seek any immigration relief until after DHS took him into custody." (*Id.* at 1.) This statement was false; as Respondents acknowledge in this case, Petitioner "applied for [a] nonimmigrant visa on March 1, 2007, but his application was denied." (Doc. No. 9 at 2.) On August 5, 2026, the court granted Petitioner's petition in *Mungia Zejada I* in part, ordering that Respondents provide Petitioner with a bond hearing within fourteen days. (*Mungia Zejada I*, Doc. No. 9 at 3–4.) On August 18, 2026, Petitioner received a bond hearing pursuant to the court's order, at which the immigration judge denied Petitioner's request for release, finding that he "constitutes an unacceptable danger to the community" and "a substantial flight risk." (Doc. No.

9-1 at 5.)

On October 8, 2026, Petitioner filed the pending habeas petition in this case, *Mungia Zejada v. Warden, Golden State Annex Detention Facility*, Case No. 1:26-cv-08256-DC-CSK ("*Mungia Zejada II*"). (Doc. No. 1.) Petitioner alleges that Respondents are "not following the rules and laws that they [are] supposed to[], they are making their own rules." (*Id.* at 8.) Petitioner argues his continued detention violates his Fifth Amendment right to due process. (*Id.* at 20.) On that same day, Petitioner filed the pending motion for a temporary restraining order seeking his immediate release. (Doc. No. 3.)

On October 15, 2026, Respondents filed their opposition arguing that Petitioner's petition is barred by the abuse of writ doctrine, and that Petitioner's detention is lawful is under 8 U.S.C. § 1226(a). (Doc. No. 9 at 2–4.)

On October 16, 2026, the court deemed *Mungia Zejada II* related to *Mungia Zejada I* and *Mungia Zejada II* was reassigned to the undersigned. (Doc. No. 10.)

**LEGAL STANDARD**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "[T]he 'in custody' provision . . . requires only that a petitioner be incarcerated—or, as here, in INS custody—at the time a habeas petition [was] filed." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr.*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678 (2001).

/////

## DISCUSSION

### A. Abuse of Writ Doctrine

Respondents argue that the *Mungia Zejada II* petition is precluded by the abuse of writ doctrine due to this court's order in *Mungia Zejada I*. (Doc. No. 9 at 3.) Specifically, Respondents contend that "the petition here reprises arguments that were raised by or available for his previous petition." (*Id.*)

"The doctrine of abuse of the writ generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Alaimalo v. United States*, 645 F. 3d 1042, 1049 (9th Cir. 2011). The abuse of writ doctrine does not apply where the petitioner can show "(1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Id.*

Here, Petitioner makes both showings. First, Petitioner has cause for bringing a successive petition as in the intervening time between the briefing in *Mungia Zejada I* and Petitioner's filing of the pending petition, the Ninth Circuit confirmed that noncitizens such as Petitioner who are detained in the interior of the United States are subject to discretionary detention under 8 U.S.C. § 1226(a), not mandatory detention under 8 U.S.C. § 1225(b). *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. July 30, 2026). Indeed, Respondents recognize this shift in authority in their responses to Petitioner's respective petitions. (*Mungia Zejada I*, Doc. No. 8 at 2) ("Petitioner entered the United States illegally [and] is thus an 'applicant for admission' who is subject to mandatory detention" under § 1225(b)); (*Mungia Zejada II*, Doc. No. 9 at 3–4) (arguing Petitioner is lawfully detained under 8 U.S.C. § 1226(a)). Thus, the change in law surrounding Petitioner's detention constitutes good cause for bringing a successive petition, and it would prejudice Petitioner not to account for that change in law through the pending petition. *See Campbell v. Blodgett*, 997 F.2d 512, 524 (9th Cir. 1992) (stating that "an intervening change in the law[] that warrants reexamination of the same ground for relief raised in an earlier petition" constitutes good cause to file a successive writ).

Second, a miscarriage of justice would result from the court's failure to entertain the pending petition as Respondents mischaracterized Petitioner's immigration history in their

response to the *Mungia Zejada I* petition. In that response, Respondents alleged that Petitioner "did not seek any immigration relief until after DHS took him into custody." (*Mungia Zejada I*, Doc. No. 8 at 1.) However, as Respondents acknowledge in their response to the *Mungia Zejada II* petition, Petitioner "applied for [a] nonimmigrant visa on March 1, 2007, but his application was denied." (Doc. No. 9 at 2.) As the court discusses below, the court has previously found that where the government is aware of a noncitizen's allegedly unlawful presence in the United States but takes no affirmative steps to detain or remove the noncitizen, that noncitizen maintains a liberty interest in their continued freedom. *See Oliveira Tinoco v. Albarran*, No. 1:26-cv-05505-DC-CKD, 2026 WL 2949219 (E.D. Cal. Oct. 1, 2026). The court relied on Respondents' misrepresentation of Petitioner's immigration record in denying Petitioner's release in *Mungia Zejada I*. It would constitute a miscarriage of justice to again deny Petitioner's requested relief because of the court's initial reliance on that mischaracterization. Accordingly, the court finds that the abuse of writ doctrine does not preclude the court's consideration of the pending petition.

**B. Due Process**

In his motion for a temporary restraining order, Petitioner contends that his ongoing detention violates his Fifth Amendment right to due process because he has "a substantial private interest in [his] own liberty that is unquestionably affected by Respondent's action detaining [him] unlawfully." (Doc. No. 3 at 2.) In their opposition, Respondents contend that Petitioner is lawfully detained under 8 U.S.C. § 1226(a), and that the procedures under that section "are constitutionally sufficient," though Respondents acknowledge that "not all as-applied challenges are foreclosed." (Doc. No. 9 at 3.)

Indeed, this court has found that where the government has knowledge of a noncitizen's allegedly unlawful presence in the United States and does not act to effectuate that noncitizen's removal, the noncitizen maintains a liberty interest in their continued liberty such that they are entitled to a pre-deprivation bond hearing before they can be detained. *See Oliveira Tinoco*, 2026 WL 2949219 (finding that a noncitizen was entitled to a pre-deprivation bond hearing where the government did not promptly detain her after expiration of her nonimmigrant visa despite her applications to renew her visa and for adjustment of status); *Polynice v. Chestnut*, No. 1:26-cv-

07674-DC-CSK, 2026 WL 3072458 (E.D. Cal. Oct. 14, 2026) (same as to a noncitizen who entered the United States unlawfully and filed an asylum application years before his detention).

Here, Respondents acknowledge that Petitioner applied for a nonimmigrant visa in 2007. (Doc. No. 9 at 2.) Thus, as explained in *Oliveira Tinoco* and *Polynice*, Respondents knew of Petitioner's presence in the United States but did not take any steps to detain or remove him, thereby creating an implicit promise of his continued liberty. As in *Oliveira Tinoco* and *Polynice*, the court finds that Petitioner's liberty interest in his continued freedom entitles him to a pre-deprivation bond hearing before he may be re-detained. Further, as in *Oliveira Tinoco* and *Polynice*, the remedy for Respondents' failure to provide Petitioner with such a pre-deprivation bond hearing is Petitioner's immediate release.

**C. Statutory Basis for Detention**

While Petitioner's due process challenge is sufficient to warrant his immediate release, the court further notes that, contrary to Respondents' argument, Petitioner's detention did not comply with 8 U.S.C. § 1226(a), and he was not provided the protections he is entitled to under that statute. Specifically, Respondents do not allege Petitioner was arrested pursuant to an arrest warrant nor do they attach an arrest warrant to their opposition. Numerous courts within the Ninth Circuit have found that absent an exigent circumstance not alleged here, the government's arrest of a noncitizen without an arrest warrant violates § 1226(a) and mandates the noncitizen's immediate release. *See Barrientos v. Moss*, No. 1:26-cv-05943-NW, 2026 WL 2283034, at *3 (E.D. Cal. Aug. 7, 2026) (ordering noncitizen's immediate release where the noncitizen's "arrest and subsequent detention under § 1226(a) was unlawful because it appears to have been made without a warrant, and no exceptions . . . applied"); *Djiwaje v. Bondi*, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *4 (D. Nev. Apr. 6, 2026) (same).

Further, as this court has previously found, the government violates § 1226(a) by not issuing a notice of custody determination upon a noncitizen's arrest. *See Aguilar Moreno v. Chestnut*, No. 1:26-cv-07855-DC-JDP, 2026 WL 3136176, at *3 (E.D. Cal. Oct. 20, 2026) (finding that immediate release is appropriate where notice of custody determination is not issued with noncitizen's detention especially where, as here, the "risk of confusion as to the lawful basis

[for detention] is particularly confusing" because the noncitizen "was initially detained under § 1225, but [the government] now contend[s] he is detained under § 1226 and has been provided all procedural protections permitted under that section").

Thus, the court will grant Petitioner's habeas petition and motion for a temporary restraining order as his continued detention violates both his constitutional rights under the Due Process Clause of the Fifth Amendment and his statutory rights under the Immigration and Nationality Act.

**CONCLUSION**

For the reasons set forth above,

1. Petitioner Artemio Mungia Zejada's (A-240-465-115) motion for a temporary restraining order (Doc. No. 3) and petition for writ of habeas corpus (Doc. No. 1) are GRANTED as follows:
   a. Respondents shall immediately release Petitioner from their custody;
   b. Upon his release, Respondents shall not impose any additional restrictions on Petitioner, such as electronic monitoring, unless that is determined to be necessary at a future custody hearing;
   c. Respondents shall RETURN all of Petitioner's documents and possessions upon his release from custody;
   d. If the government seeks to re-detain Petitioner, they shall provide him with a prompt bond hearing at which Petitioner shall bear the burden of showing that he is not a flight risk or a risk to community safety;
2. Petitioner's pending motions (Doc. Nos. 2, 4) are DENIED as having been rendered moot by this order;
3. The Clerk of the Court is directed to serve a copy of this order on the Golden State

/////

/////

/////

/////

Annex Detention Facility; and

4. The Clerk of the Court is directed to enter judgment for Petitioner and close this case.

IT IS SO ORDERED.

Dated: **October 26, 2026**

Dena Coggins
United States District Judge